**SO ORDERED.**

**SIGNED this 26 day of June, 2012.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

**IN RE:**

**JOHN ADAM POWELL,**                                    **CHAPTER 7**
**KATHERINE ANITA POWELL,**                        **CASE NO.  10-03859-8-RDD**

      **DEBTORS**

### ORDER GRANTING MOTION FOR SANCTIONS

Pending before the Court is a Motion Violation of Discharge Injunction, filed by John Adam Powell and Katherine Anita Powell (the "Debtors") on April 3, 2012 (the "Motion").  No responses were filed to the Motion. A hearing took place on May 22, 2012 in Greenville, North Carolina.

### BACKGROUND

The Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code on May 13, 2010.  Bank of America was listed on the Debtors' schedules as holding a secured first mortgage on property the Debtors then owned in Missouri in the amount of $76,739.00.  Bank of America was also scheduled as holding a secured second mortgage on the property in the amount of $8,923.51.

1

In the Debtors' Statement of Intention, the Debtors indicated their intention to surrender the Missouri property.

An appointed Trustee of Milsap and Singer, P.C., 612 Spirit Dr. Chesterfield MO 63005 conducted a foreclosure sale of property secured by a Deed of Trust, more specifically identified as LOT TWENTY (20) OF OAKLAND MANOR PLAT NUMBER ONE (1), RECORDED IN PLAT BOOK 11, PAGE 259, BOONE COUNTY, MISSOURI RECORDS. A foreclosure was completed on said property on July 6th, 2010, after the filing date of the petition and before the entry of the discharge. [1]

Subsequent to the foreclosure, Bank of America and its servicer BAC Home Loans Servicing, LP (the "Creditor") sent a billing statement to the Debtors for the billing cycle June 1, 2010 to June 30, 2010, requesting payment in the amount of $584.17.  On August 16, 2010, the Debtors received their discharge.  After the entry of the discharge, the Debtors continued to reside in Blounts Creek, North Carolina.   The Debtors forwarded the billing statement to their counsel. Upon receipt, counsel for the Debtors, sent a letter to the Creditor dated July 20, 2010, advising it that the Debtors had filed for bankruptcy and asked that the statements be discontinued.

The Creditor then sent another billing statement addressed to the Debtors in Blounts Creek, North Carolina for the billing cycle September 1, 2010 to September 30, 2010 requesting payment of $863.20.  The Creditor sent a billing statement to the Debtors for the billing cycle October 1, 2010 to October 30, 2010, requesting payment in the amount of $957.07.  In response,

---

[1] Completion of the foreclosure sale on July 6, 2010 and the billing statement sent July 25, 2010 occurred prior to the entry of the discharge, but after the entry of the order for relief on May 13, 2010, and therefore were willful violations of the automatic stay pursuant to 11 U.S.C.§ 362.

2

Counsel for the Debtors sent a letter to the Creditor again dated October 19, 2010 advising it that the Debtors filed for bankruptcy on May 13, 2010 and received a discharge on August 16, 2010. The letter requested that the Creditor cease collection efforts, and if the Creditor continued to contact the Debtors, he would consider the Creditor's conduct to be a willful violation of the automatic stay and would act accordingly.  Debtor's counsel also sent a letter on December 6, 2010, advising the Creditor of the same.

The Creditor sent a billing statement addressed to the Debtors in Grimesland, North Carolina where the Debtors had relocated. This statement was for the billing cycle January 1, 2011 to January 31, 2011 and  requested payment in the amount of $1,236.10.  Counsel for the Debtor, again sent another letter to Creditor on January 31, 2011, advising it that the Debtors had filed bankruptcy and all further collection efforts should cease. This letter was sent to the Creditor at both its Wilmington Delaware address and its Simi Valley California address.

The Creditor sent another statement for the billing cycle February 1, 2011 to February 28, 2011 requesting payment in the amount of $1,321.46.  On February 16, 2011 Mr. Richardson again sent another letter to the Creditor at its Simi Valley, California address asking it to cease all collection efforts.  The Creditor sent another statement for the billing cycle March 1, 2011 to March 31, 2011, addressed to the Debtors requesting payment in the amount of $1,415.04.

On May 3, 2011, Mr. Richardson sent another letter to Creditor notifying them that the statements should cease and included a copy of the discharge. On or about July 1, 2011, the Creditor sent the Debtors a letter informing them that they were considered a debt collector pursuant the federal Fair Debt Collections Practices Act and as a result, it was sending the Debtors a Fair Debt Collection Practices Act Notice.  The Creditor sent the Debtors a billing statement for the billing

cycle June 1, 2011 to June 30, 2011 requesting payment in the amount of $1,691.19.

The Debtors relocated to Georgia, and the Creditor sent a billing statement to the Debtors' new billing address for the billing cycle October 1, 2011 to October 31, 2011 requesting payment in the amount of $2,064.09.  The Creditor continued to send monthly statements, with the last statement being for the billing cycle of April 1, 2012 to April 30, 2012, requesting payment in the amount of $2,615.26.

At the hearing, the male debtor testified that the constant letters sent by the Creditor caused a high degree of stress and embarrassment. The Debtors were trying to put the bankruptcy behind them. The letters sent from the Creditor resulted in anxiety and stress for his entire family.

## DISCUSSION

The Debtors seek sanctions and attorney fees for violation of the discharge injunction pursuant to 11 U.S.C. § 524(a) and willful violation of the automatic stay pursuant to 11 U.S.C. § 362(k).[2]

A discharge in a bankruptcy case "operates as an injunction against . . . an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ." 11 U.S.C. § 524(a)(2).  The appropriate remedy for violation of the discharge injunction is a contempt action.  *Almond v. Ford Motor Co. (In re Almond)*, 2007 WL 1345224 at *3 (Bankr. M.D.N.C. 2007).  Section 524(a) may be enforced through the court's contempt power under 11 U.S.C. § 105(a).  *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002).

Section 105(a) provides:

---

[2]Although the Debtors did not specifically allege a violation of the automatic stay, the evidence presented at the hearing showed a willful violation of the automatic stay.

> [t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Section 105 allows a bankruptcy court to enter sanctions for abuse of judicial process. *In re Volpert*, 110 F.3d 494, 501 (7th Cir. 1997); *In re Rimsat, Ltd.*, 229 B.R. 914, 921 (Bankr. N.D. Ind. 1998); *Knepper v. Skekloff*, 154 B.R. 75, 80 (N.D. Ind. 1993).

> To establish civil contempt, the movant must show by clear and convincing evidence: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

*In re Adams*, 2010 WL 2721205 at *2 (Bankr. E.D.N.C.), *aff'd*, Case No. 5:10-CV-340-BR (E.D.N.C. Jan. 24, 2011) (citing Ashcraft *v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) *aff'd*, Case No. 5:10-CV-340-BR (Jan. 24, 2011)).

Here, the Creditor had knowledge of the bankruptcy petition filed on May 13, 2010 and the Discharge Order docketed on August 16, 2010. Counsel for the Debtor proffered to the Court that service was made by certified mail, with receipts that show that the Creditor did receive the motion for violation of the discharge injunction. The discharge was in the Debtors' favor because it provided for a discharge of the Debtors under section 727 of title 11, United States Code.

After the entry of the discharge, the Debtors continued to receive statements from the Creditor beginning on or around July 25, 2010. Counsel for the Debtors, sent numerous letters to the Creditor informing it that Debtors had filed for bankruptcy, received their discharge, and that the statements should be discontinued. Introduced into the record are fourteen written mailings sent

by the Creditor to the Debtors in an attempt to collect on the indebtedness on the property in Missouri. These billing statements were sent after counsel for the Debtors had sent at least eight pieces of correspondence requesting that the Creditor cease sending statements to the Debtor in violation of the discharge injunction.

Further, Counsel for the Debtors introduced into evidence a Notice of Trustee's Sale and a Affidavit of MO Closers, LLC representing that on July 6, 2010, the Missouri property was sold at a foreclosure sale, in violation of the automatic stay.

Thus, the facts show by a preponderance of the evidence that the Creditor had knowledge that the Debtors had filed for bankruptcy and that they were granted a discharge. Additionally, the facts establish by a preponderance of the evidence that the Debtors suffered harm as a direct result of the Creditor's actions. At the hearing, the male debtor testified that he was embarrassed and distressed by the unrelenting pursuit of the Creditor to collect. The billing statements from the Creditor followed their family from home to home, and the sight of seeing their debt grow each month was the source of unwavering anxiety for the entire family. The Creditor did not attempt to apologize or mitigate the damages incurred by the Debtors, nor did they respond to the Debtors' motion or appear at the hearing.

Based on these findings, the Debtors have proven by a preponderance of the evidence, and the Court concludes that Bank of America and its servicer BAC Home Loans Servicing, LP, is in willful contempt of the discharge injunction entered by this court on August 16, 2010 and also, in willful violation of the automatic stay, that went into effect on May 13, 2010. Debtors' motion to hold Bank of America and its servicer BAC Home Loans Servicer, LP, in willful contempt of the discharge injunction and willful violation of the automatic stay is **GRANTED.**

6

The Court awards attorney fees to Ernest C. Richardson, IV in the amount of $3,000.00.  The Court awards actual damages in the sum of $2,500.00  payable to the Debtors.   The Court further imposes civil sanctions against Bank of America and its servicer BAC Home Loans Servicing, LP, for willful violation of the discharge injunction and automatic stay in the amount of $50,000.00 to be paid to the Clerk of the U. S. Bankruptcy Court for the Eastern District of North Carolina.  Said sanctions, attorneys fees and damages shall be paid within ten (10) days of the date of this Order.

**SO ORDERED**.

**END OF DOCUMENT**